IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,082

In the Matter of TIMOTHY M. STAROSTA,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 3, 2021. One-year suspension.

*W. Thomas Stratton Jr.*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Timothy M. Starosta,* respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Timothy M. Starosta, of Liberty, Missouri, an attorney admitted to the practice of law in Kansas in 2009.

On November 18, 2020, the office of the Disciplinary Administrator filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent failed to file an answer to the formal complaint. Respondent appeared in person pro se at the hearing before a panel of the Kansas Board for Discipline of Attorneys, which was conducted on January 21, 2021. Respondent stipulated to the facts and rule violations alleged.

At the conclusion of the hearing, the panel determined that respondent had violated KRPC 1.1 (competence) (2021 Kan. S. Ct. R. 321); 1.3 (diligence) (2021 Kan. S. Ct. R. 325); 1.4 (communication) (2021 Kan. S. Ct. R. 326); 1.15 (safekeeping property) (2021 Kan. S. Ct. R. 366); 3.2 (expediting litigation) (2021 Kan. S. Ct. R. 384);

1

5.5 (unauthorized practice of law) (2021 Kan. S. Ct. R. 406); and 8.1 (disciplinary matters) (2021 Kan. S. Ct. R. 424); and former Rule 207 (cooperation) (2020 Kan. S. Ct. R. 246). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below.

"*Findings of Fact*

. . . .

"Admission to the Practice of Law in Kansas and Missouri

"13.   In 2008, the Missouri Supreme Court admitted the respondent to the practice of law. At the time of the hearing on the formal complaint, the respondent stated that he had five disciplinary complaints pending in Missouri.

"14.   The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on September 25, 2009. On October 8, 2019, the Kansas Supreme Court suspended the respondent's license for failing to pay the continuing legal education fee and for failing to complete the requisite continuing legal education hours. The respondent's license to practice law in Kansas remains suspended.

"DA13396

"15.   On April 22, 2019, R.A. and J.A. retained the respondent to file a step-parent adoption case on behalf of R.A. R.A. and J.A. paid the respondent $500, with the understanding that if the matter was uncontested, the respondent would provide a $300 refund to R.A. and J.A.

"16.   After retaining the respondent, J.A. repeatedly attempted to contact the respondent for updates regarding the status of the adoption case. The respondent failed to respond to many of the requests for information from J.A.

"17. On August 19, 2019, the respondent sent an email message to J.A., informing her that the adoption petition had been filed. The respondent did not provide a copy of the petition to R.A. or J.A.

"18. On October 9, 2019, J.A. filed a complaint with the disciplinary administrator's office. The disciplinary administrator's office provided the respondent with a copy of the complaint and directed the respondent to provide a written response within 20 days. The respondent failed to provide a written response to the complaint.

"19. On October 16, 2019, R.A. filed a document with the Johnson County District Court requesting that the respondent be removed as his attorney and requesting additional time to schedule a hearing on the adoption petition.

"20. On November 18, 2019, R.A. and J.A. appeared in court, *pro se*. The district court granted the adoption petition.

"DA13425

"21. In September, 2019, Commerce Bank provided the disciplinary administrator's office with notifications that two checks drawn on the respondent's attorney trust account were returned for insufficient funds.

"22. On September 16, 2019, the disciplinary administrator's office sent the respondent a letter, at his registered address, informing him of the overdrafts and directing him to provide a written explanation within 15 days. The respondent failed to provide a written explanation.

"23. On September 30, 2019, the respondent contacted the disciplinary administrator's office and promised to provide an explanation regarding the overdrafts by October 4, 2019. The respondent failed to do so.

"24. On October 21, 2019, the disciplinary administrator's office sent a second letter to the respondent requesting an explanation regarding the overdrafts and reminding the respondent of his promise to provide an explanation regarding the overdrafts by

3

October 4, 2019. The disciplinary administrator's office gave the respondent 10 additional days to provide information regarding the overdrafts. Again, the respondent failed to provide an explanation regarding the overdrafts.

"25.   On November 13, 2019, the disciplinary administrator's office wrote to the respondent again. This time, the disciplinary administrator's office informed the respondent that the overdrafts were being docketed as a complaint for investigation. The disciplinary administrator's office again requested that the respondent provide an explanation for the overdrafts. Again, the respondent failed to provide an explanation regarding the overdrafts.

"26.   As an aside, the hearing panel notes that after the respondent's suspension from the practice of law in Kansas on October 8, 2019, the respondent continued to deposit funds into his attorney trust account. Exhibit 18 consists of bank records regarding the respondent's attorney trust account from September, 2019 through July, 2020. Following the respondent's suspension, in that time period, he deposited a total of $43,394.80 into his attorney trust account, as follows:

| | |
|---|---|
| October 9, 2019 | $1,000.00 |
| October 16, 2019 | $7,000.00 |
| December 10, 2019 | $250.00 |
| December 11, 2019 | $250.00 |
| December 16, 2019 | $100.00 |
| December 26, 2019 | $100.00 |
| January 24, 2020 | $325.00 |
| January 27, 2020 | $148.00 |
| January 30, 2020 | $6,000.00 |
| March 26, 2020 | $375.00 |
| April 1, 2020 | $235.00 |
| April 22, 2020 | $450.00 |
| May 5, 2020 | $250.00 |
| July 23, 2020 | $350.00 |
| July 29, 2020 | $26,561.80 |

4

"27. At the hearing on the formal complaint, the respondent testified regarding the overdrafts.

'Q. . . . With regard to the insufficient funds in your trust account that resulted in the refusal to honor the $799 and the $147.50 items, what were—do you know what those items were bills to be paid?

'A. Those are payments to myself where I thought I had earned–not that I thought that I had earned the fees, I had earned the fees and so I was paying myself. And I thought I had paid myself—hadn't paid myself on a case because of my accounting software told me that I hadn't paid it, even though I had previously paid it to myself and I didn't realize that. So when I wrote that check, it bounced another check on a speeding ticket, which I immediately put cash back into the trust account to fix the issue.'

"DA13510

"28. On October 7, 2019, W.M. and P.M. retained the respondent to protect their interest in real property that was subject to the jurisdiction of the Wyandotte County District Court in a divorce action involving their daughter, S.W., Wyandotte County District Court case number 19-DM-574. That same day, W.M. and P.M. paid the respondent a $1,000 advance fee. The respondent deposited the fee into his attorney trust account.

"29. On January 8, 2020, S.W.'s attorney, Mike Nichols, spoke with the respondent by telephone. That same day, Mr. Nichols sent an email message to the respondent, requesting information establishing how much money W.M. and P.M. invested in the real property that was subject to the divorce case.

"30. On March 4, 2020, the respondent attempted to send Mr. Nichols an email message, but the respondent experienced problems with the attachment and the effort was unsuccessful. The email message from the respondent to Mr. Nichols did not contain any details about the contents of the attachment.

5

"31. W.M. and P.M. attempted to contact the respondent by telephone repeatedly. The respondent did not return many of the telephone calls.

"32. The respondent took no additional action on behalf of W.M. and P.M. The respondent did not appear in court on behalf of W.M. and P.M. The respondent did not meet with W.M. and P.M. after the initial consultation. Throughout the period of representation, the respondent did not send W.M. and P.M. any written correspondence.

"Disciplinary Investigations

"33. On March 24, 2020, J. Ryan Erker, an attorney, was assigned to investigate DA13396 and DA13425. Mr. Erker spoke with the respondent by telephone. Additionally, Mr. Erker mailed a letter to the respondent. Mr. Erker requested that the respondent provide a written response to the complaints and provide certain documents. Mr. Erker also asked the respondent to provide a date when the respondent would be available for a telephone interview. The respondent did not respond to the requests made by Mr. Erker.

"*Conclusions of Law*

"34. As mentioned above, the disciplinary administrator's office requested permission to amend the formal complaint by interlineation to add a violation of KRPC 8.1 and former Rule 218. The respondent lodged no objection and the hearing panel allowed the amendment.

"35. So, while the hearing panel allowed the amendment, before the hearing panel may consider whether the respondent violated those provisions, the hearing panel must consider whether there are sufficient factual allegations in the formal complaint to establish those violations.

"36. The hearing panel concludes, as a matter of law, that the disciplinary administrator's office included sufficient factual allegations to establish a violation of KRPC 8.1. *See* ¶¶ 6, 9, and 13 of the Formal Complaint. Thus, it is proper for the hearing panel to consider whether the respondent violated KRPC 8.1.

6

"37.   Because the disciplinary administrator's office did not include factual allegations to establish a violation of former Rule 218 (2020 Kan. S. Ct. R. 265) in the formal complaint, the hearing panel concludes that it is improper to consider a violation of former Rule 218 (2020 Kan. S. Ct. R. 265).

"38.   Additionally, in the formal complaint, the disciplinary administrator's office alleged a violation of KRPC 8.4(g). However, during closing arguments, the disciplinary administrator's office argued that the respondent violated KRPC 8.4(d) but made no mention of KRPC 8.4(g). Based on the variation, the hearing panel makes no conclusions regarding KRPC 8.4(d) or KRPC 8.4(g).

"39.   Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safekeeping property), KRPC 3.2 (expediting litigation), KRPC 5.5 (unauthorized practice of law), KRPC 8.1 (cooperation), and former Rule 207 (2020 Kan. S. Ct. R. 246) (cooperation), and as detailed below.

"KRPC 1.1 and KRPC 1.3

"40.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' Also, attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to exercise the thoroughness reasonably necessary in his representation of R.A., W.M., and P.M. Likewise, the respondent failed to diligently represent his clients. The conduct that establishes violations of KRPC 1.1 also establishes violations of KRPC 1.3, in this case. The respondent did not provide R.A. with a copy of the adoption petition, the respondent did not take any action on behalf of R.A. after filing the petition, the respondent did not provide Mr. Nichols with the evidence to support W.M. and P.M.'s claim, and the respondent did not take any action to protect W.M. and P.M.'s interest in the real property. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1 and KRPC 1.3.

7

"41.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* In this case, the respondent violated KRPC 1.4(a) when he failed to return many of J.A., W.M., and P.M.'s telephone calls and, thus, failed to keep his clients informed about the status of the representations. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.15

"42.   Lawyers must keep the property of their clients safe. *See* KRPC 1.15. In this case, two checks drawn on the respondent's attorney trust account were returned for insufficient funds. The respondent inadvertently overpaid himself causing that check to be dishonored. In addition, that transaction caused a client's check, drawn to pay a speeding ticket, to also be dishonored. The respondent failed to properly safeguard his client's property by failing to properly administer his attorney trust account. Therefore, the hearing panel concludes that the respondent violated KRPC 1.15.

## "KRPC 3.2

"43.   An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. *Id.* The respondent caused unnecessary delay in J.A.'s case by failing to take action after the step-parent adoption petition was filed. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.2.

## "KRPC 5.5

"44.   It is misconduct for a lawyer to engage in the unauthorized practice of law. KRPC 5.5. Specifically, KRPC 5.5(a) provides that '[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction.' On October 8, 2019, the Kansas Supreme Court suspended the respondent's license to practice law. After his license was suspended, the respondent continued to represent

8

W.M. and P.M. in discussions with Mr. Nichols. The hearing panel concludes that the respondent violated KRPC 5.5(a).

"KRPC 8.1 and Former Rule 207 (2020 Kan. S. Ct. R. 246)

"45.   Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and former Rule 207(b) (2020 Kan. S. Ct. R. 246) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

> 'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Former Rule 207(b) (2020 Kan. S. Ct. R. 246).

The respondent knew that he was required to forward written responses to the complaints and provide the attorney investigator with requested information. He had been repeatedly instructed to do so in writing by the disciplinary administrator's office and the attorney investigator. Because the respondent knowingly failed to provide written responses to the complaints, the hearing panel concludes that the respondent violated KRPC 8.1(b) and former Rule 207(b) (2020 Kan. S. Ct. R. 246).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"46.   In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

9

"47.  *Duty Violated*. The respondent violated his duty to his clients to provide competent and diligent representation and adequate communication. The respondent violated his duty to his clients to properly safeguard his client's property. Also, the respondent violated his duty to the legal system to expedite litigation. Finally, the respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"48.  *Mental State*. The respondent negligently and knowingly violated his duties.

"49.  *Injury*. Because of the swift action by his clients, the respondent's misconduct caused his clients only potential injury. Additionally, however, the respondent's misconduct caused actual injury to the legal system.

"Aggravating and Mitigating Factors

"50.  Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present.

"51.  *A Pattern of Misconduct*. The respondent engaged in a pattern of misconduct. In the respondent's representation of R.A., W.M., and P.M., the respondent failed to provide competent and diligent representation and adequate communication.

"52.  Additionally, because the respondent continued to make deposits into his trust account after his license to practice law was suspended, the hearing panel concludes that the respondent engaged in a pattern of engaging in the unauthorized practice of law. The hearing panel did not base the conclusion that the respondent violated KRPC 5.5 on the 15 deposits into the respondent's attorney trust account made between October 9, 2019, and July 29, 2020, because those facts were not alleged in the formal complaint. However, because evidence of the deposits was presented at the hearing on the formal complaint, it is proper for the hearing panel to consider that evidence in aggravation.

"53. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safekeeping property), KRPC 3.2 (expediting litigation), KRPC 8.1(b) (cooperation), and former Rule 207 (2020 Kan. S. Ct. R. 246) (cooperation). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"54. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The disciplinary administrator's office and the attorney investigator repeatedly instructed the respondent to provide written responses to the complaints. The respondent failed to do so. Additionally, the attorney investigator requested that the respondent provide him with certain documents. The respondent did not provide the requested documents. The attorney investigator asked the respondent to set up a time for an interview. Again, the respondent did not do so. Finally, the respondent failed to file an answer to the formal complaint despite an extension of time to do so. The hearing panel concludes that the respondent's failure to provide responses to the complaints, to provide the requested documents, to set up an interview with the attorney investigator, and to file an answer aggravates the misconduct in this case.

"55. *Vulnerability of Victim*. R.A., W.M., and P.M. were vulnerable to the respondent's misconduct.

"56. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2009. At the time of the misconduct, the respondent had been practicing law for approximately 10 years.

"57. *Indifference to Making Restitution*. At the time of the hearing on the formal complaint, the respondent had not refunded the $500 to R.A. and J.A. and he had not returned the $1,000 held in trust for W.M. and P.M. During the hearing, the respondent indicated that he would refund the $500 to R.A. and J.A. and return the $1,000 to W.M. and P.M. The hearing panel finds that the respondent's failure to refund the unearned fees to R.A. and J.A. and the respondent's failure to return the funds held in trust for W.M. and P.M. prior to the hearing on the formal complaint is a factor in aggravation.

11

"58.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present.

"59.   *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

"60.   *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"61.   *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent testified that, during the period of time that the misconduct occurred, he suffered a series of personal tragedies. Additionally, the respondent testified that he has suffered and continues to suffer from depression. It is clear that the respondent's personal problems and his depression contributed to his misconduct. This factor in mitigation is compelling and the hearing panel gave this factor great weight.

"62.   *The Present Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions.* Even though the respondent failed to cooperate prior to the disciplinary hearing, during the hearing, the respondent stipulated to the factual allegations and rule violations.

"63.   *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse to J.A. for failing to take action to effect the step-parent adoption for R.A. Additionally, in his closing argument, the respondent apologized to 'everybody involved' and apologized for not responding to the complaints.

"64.   In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

12

'Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.' ABA Standard 4.13.

'Suspension is generally appropriate when . . . a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' ABA Standard 4.42(b).

"*Recommendations of the Parties*

"65.   The disciplinary administrator's office recommended that the respondent's license to practice law be suspended for a period of one year. The disciplinary administrator's office also recommended that prior to reinstatement, the respondent undergo a reinstatement hearing under Rule 232 (2021 Kan. S. Ct. R. 287). The disciplinary administrator's office recommended that at the reinstatement hearing, the respondent present a plan of probation, that the respondent establish that he refunded $500 to R.A. and J.A. and $1,000 to W.M. and P.M., that the respondent establish that he continued in treatment and has made satisfactory progress, and that the respondent establish that he complied with the recommendations of KALAP.

"66.   The respondent recommended that he be allowed to continue to practice law and agreed to comply with any terms and conditions and 'would do anything' to keep his license.

"*Recommendation of the Hearing Panel*

"67.   Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of one year. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Rule 232 (2021 Kan. S. Ct. R. 287). At the reinstatement hearing, the hearing panel recommends that the respondent present a plan of supervised probation, that the respondent establish that he has returned the fees to his clients, that the respondent established he has received sufficient treatment for his depression and is in a position to resume the active practice of

13

law, and that the respondent establish that he complied with the recommendations of KALAP.

"68.   Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of the KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 226(a)(1)(A) (2021 Kan. S. Ct. R. 276). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he failed to file an answer. During the hearing before the disciplinary panel, respondent admitted to violating KRPC 1.1, 1.3, 1.4, 1.15, 3.2, 5.5, and 8.1, and former Supreme Court Rule 207. No exceptions were filed in the case, and the finding of facts as set forth in the hearing panel's final hearing report are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2021 Kan. S. Ct. R. 281). The evidence before the hearing panel clearly established the charged misconduct violated KRPC 1.1 (competence); 1.3 (diligence); 1.4 (communication); 1.15 (safekeeping property); 3.2 (expediting litigation); 5.5 (unauthorized practice of law); and 8.1 (disciplinary matters); and former Rule 207 (cooperation) (2020 Kan. S. Ct. R. 246).

14

On October 26, 2021, the Disciplinary Administrator filed a motion requesting the court judicially notice two additional facts: (1) on June 3, 2021, by order of the Supreme Court of Missouri, respondent was disbarred from the practice of law in Missouri; and (2) respondent's Kansas license to practice law was suspended in October 2019 and has remained suspended for failure to pay a continuing legal education (CLE) fee and failure to complete the CLE hours required for continued licensure. At oral argument, respondent confirmed he had no objection to the motion.

K.S.A. 60-412(c) authorizes the court to "take judicial notice of any matter specified in K.S.A. 60-409, whether or not judicially noticed by the [court below]." K.S.A. 60-409(b) allows courts to take judicial notice of "specific facts . . . which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." Courts shall notice such facts at the request of a party if the party furnishes the court with sufficient information to comply with the request and has given the adverse party notice and an opportunity to respond. K.S.A. 60-409(c).

The Disciplinary Administrator's office has provided sufficient information to support the request and afforded respondent the opportunity to address its motion. Therefore, we grant the Disciplinary Administrator's motion and take judicial notice that respondent has been disbarred from the practice of law in Missouri, and his Kansas license remains suspended for failing to pay the CLE fee and complete the required CLE hours.

The only issue left for us to resolve is the appropriate discipline. The disciplinary panel and Disciplinary Administrator recommended that we suspend respondent's license to practice law for one year and that respondent be subject to a reinstatement hearing under Supreme Court Rule 232 (2021 Kan. S. Ct. R. 287). Both also recommended that respondent develop a supervised probation plan to present at the reinstatement hearing,

and that the plan include reimbursement of attorney's fees to his clients. Both further recommended that respondent work with Kansas Lawyers Assistance Program (KALAP) and comply with their recommendations. Respondent requested that he be allowed to continue to practice law subject to appropriate terms and conditions.

The court agrees with the combined recommendations of the disciplinary panel and the Disciplinary Administrator. Respondent does not have a history of misconduct with the Kansas Disciplinary Administrator's Office. Respondent explained that he is struggling with depression due to a series of personal tragedies and that these events contributed to his misconduct. These personal tragedies would be difficult for anyone to endure, and we acknowledge these events constitute a mitigating circumstance in this case. Even so, we cannot overlook the fact that respondent's misconduct caused real and substantial injury to his clients. Nor can we overlook the risk of continued harm to the public in the absence of appropriate discipline.

To properly balance these competing interests, we impose the following discipline. Respondent's license shall be suspended for one year. Respondent must undergo a reinstatement hearing pursuant to Rule 232 before his petition for reinstatement will be considered. Respondent's petition for reinstatement must include a probation plan for appropriate supervision and support for the resumption of his practice of law. At the reinstatement hearing, the respondent must show he has complied with or satisfied the following conditions to reinstatement:  (1) he has made full restitution by refunding fees to his clients R.A. and J.A. and W.M. and P.M.; (2) he has received appropriate care and treatment for depression, is complying with any treatment plan developed by qualified providers, and is in a position to resume the active practice of law; (3) he has complied with other recommendations made by KALAP; (4) he has either provided notice to the Disciplinary Administrator that he disputes the findings of the Missouri Supreme Court's June 3, 2021 default order of disbarment, or in the alternative, demonstrated that he has

16

taken appropriate corrective action to address the issues giving rise to the Missouri violations and remedied any financial harm to the victims of this misconduct; and (5) he is in compliance with the Kansas CLE requirements and CLE fee obligations.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Timothy M. Starosta is suspended for one year from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(3) (2021 Kan. S. Ct. R. 275) for violations of KRPC 1.1, 1.3, 1.4, 1.15, 3.2, 5.5, and 8.1, and former Supreme Court Rule 207.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2021 Kan. S. Ct. R. 286).

IT IS FURTHER ORDERED that if respondent applies for reinstatement, he shall comply with Supreme Court Rule 232 (2021 Kan. S. Ct. R. 287) and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that if respondent applies for reinstatement, he shall submit a probation plan and demonstrate compliance with or satisfaction of the conditions consistent with this opinion.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.